UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Deandre Michael Howard, | Case No.: 2:22-cv-1004-JAD-MDC |
| Plaintiff | |
| v. | **Findings of Fact, Conclusions of Law, and Judgment Following Bench Trial** |
| United States of America, | [ECF No. 104] |
| Defendant | |

This Federal Tort Claims Act (FTCA) case arises out of a June 29, 2020, car accident between Plaintiff Deandre Michael Howard and Federal Bureau of Investigation (FBI) Agent Mark Neira. The case proceeded to a bench trial on Howard's negligence claim on May 19, 2025. Having considered the trial evidence, the parties' stipulations, and counsel's closing arguments, I find in favor of Plaintiff Deandre Michael Howard in the amount of $136,176.13.

**Analysis**

**A.   Howard has proven his negligence claim.**

As the Ninth Circuit held in *Taylor v. United States*, "state substantive law governs in suits brought under the FTCA."[1] "It is well established that to prevail on a negligence claim [in Nevada], a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages."[2] Howard has established all of these elements by a preponderance of the evidence.

---

[1] *Taylor v. United States*, 821 F.2d 1428, 1432 (9th Cir. 1987).

[2] *Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009).

### 1.     Duty and breach

As the defense conceded in its trial brief, "[t]he elements of duty and breach are not disputed in this case."[3] It acknowledges that Agent Neira "owed a duty to exercise reasonable care when driving behind Howard" and "breached this duty when he rear-ended Howard's vehicle."[4] Agent Neira's trial testimony confirmed that he was speeding and distracted at the time of the collision, and though he applied the brakes, he didn't do so in time to prevent the collision. So the elements of duty and breach are established by a preponderance of the evidence.

### 2.     Contributory negligence

But the government has also asserted contributory negligence as an affirmative defense. It theorizes that Howard breached his "duty to not drive his car in an unsafe condition" because the brake lights and turn signal on his classic Ford Mustang were not engaged at the time of the collision.[5] As the Nevada Supreme Court has explained it, "[c]ontributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection, and which is a legally contributing cause," alongside the defendant's negligence, "in bringing about the plaintiff's harm."[6] "In a defense of contributory negligence, the defendant is not saying that it was not the cause of the plaintiff's injuries. Rather, the defendant is saying that even though the plaintiff can prove its prima facie case of negligence, the plaintiff too had a

---

[3] ECF No. 91 at 6.
[4] *Id*. at 7.
[5] *Id*.
[6] *Natapu v. Caterpillar, Inc.*, 562 P.3d 224 (Nev. 2025) (quoting Restatement (Second) of Torts § 463 (Am. Law Inst. 1965)).

duty that it breached, and the plaintiff was also the cause of its injuries."[7]  A contributory-negligence defense must be proven by a preponderance of the evidence.[8]

There is some evidence that Howard's taillights were not engaged.  The report prepared by an FBI internal investigator after meeting with Agent Neira recounts that Howard's vehicle "did not appear to have brake lights or a tur signal engaged."[9]  But at trial, Agent Neira could not recall whether he saw Howard's brake lights or turn signal, and he admitted that his inattention was the cause of the collision.  Howard testified at trial that everything on his car was operational, including the indicator lights—a fact he took great pride in.  And a post-accident photo of the Mustang depicts that the center brake light was illuminated and thus operational.[10]  So I do not find that a preponderance of the evidence supports the government's contributory negligence defense.

### 3. Causation and damages

"It is a well-settled principle of tort law that when a defendant's negligence causes an injury to a plaintiff, the defendant is liable for the resulting damage to the plaintiff, even though the plaintiff had a preexisting condition that made him more susceptible to injury or made the consequences to him more severe."[11]  This principle is commonly known as the "eggshell plaintiff" rule.[12]  "In cases where the plaintiff has a pre-existing condition and then suffers injury

---

[7] *Clark Cnty. Sch. Dist. v. Richardson Const., Inc.*, 168 P.3d 87, 96 n. 26 (Nev. 2007).

[8] *Smith v. Odd Fellows Bldg. Ass1n*, 205 P. 796, 798 (Nev. 1922) ("[C]ontributory negligence is an affirmative defense [that] must ordinarily be specially pleaded and proved by a preponderance of the evidence.").

[9] EXH 506 (US0054).

[10] EXH 501 (PLTF470).

[11] *Jordan v. Atchison, Topeka & Santa Fe Ry. Co.*, 934 F.2d 225, 228–29 (9th Cir. 1991).

[12] *See, e.g., Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1192 (9th Cir. 2002), overruled on other grounds by *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016)).

to that same area, it is the plaintiff's initial burden to prove that the accident was a cause of the plaintiff's claimed injury."[13]

When Howard set out on the road in his Mustang on June 29, 2020, he was an eggshell plaintiff, the evidence at trial overwhelmingly showed. He was fully disabled from a workplace accident in 2003 in which a forklift crushed him against a pile of gravel, leaving him with broken bones, damaged tissue, and injuries to most of his spine. Howard had undergone six back surgeries and a right-shoulder surgery, spent years under a pain-management specialist, and was on a constant regimen of opioids, anticonvulsants, and muscle relaxers. He had chronic bilateral leg numbness and tingling. He was candid about this pre-existing condition at trial, explaining that although he was able to function and tolerate it, the pain was constant, he had muscle spasms, and he was always aware of the pain.

Howard claims that this car accident left him with two new injuries: a back injury that caused radiating, sciatica nerve pain down his right leg, and a hurt left shoulder. He testified that the addition of these new conditions on top of his pre-existing ones from the 2003 workplace injury has negatively impacted his life, causing him to become a recluse and making him reluctant to engage with his family. Though he declined medical treatment at the accident scene, Howard went to the Valley Hospital emergency room the next day complaining of these new pains, and he immediately hired a lawyer who referred him to several new medical providers, where he racked up tens of thousands of dollars in medical bills. At trial, Howard presented the testimony of an orthopedic spine surgeon, Dr. George Elkanich, who opined that the sciatic leg pain and right shoulder pain were from injuries caused by the car accident and further opined in a very general way that all of Howard's post-accident medical treatment and the charges for it

---

[13] *Valentine v. State Farm Mut. Auto. Ins. Co.*, 105 F. Supp. 3d 1176, 1182 (D. Nev. 2015).

were reasonable and customary. He asks for his past medical expenses plus an award of $150,000 for his pain and suffering; he is not seeking future medical expenses.[14]

The government takes the position that Howard suffered no new injuries at all from this crash; at most he had some soft-tissue injuries that would have resolved without treatment within a few weeks' time. It presented the testimony of orthopedic spine surgeon Dr. Benjamin Bjerke, who found no objective evidence of a new back injury from the accident in Howard's extensive medical records, films, and studies. He concluded to a reasonable degree of medical certainty that Howard didn't experience any permanent back injury from the crash lasting more than about a month, so any pain and suffering beyond that is related to Howard's extensive pre-existing condition.

The government also offered the opinion[15] of orthopedic shoulder surgeon Dr. Adam Lorenzetti, who testified that Howard's medical records reflect that the shoulder injury he suffered was merely a strain, and there are no signs of a traumatically induced injury. Lorenzetti opined that it was reasonable for Howard to visit Valley Hospital after the accident and to undergo four to six weeks of physical therapy to resolve this mild, soft-tissue injury. But he testified that the pain-management procedures that Howard underwent for the shoulder were not reasonably indicated for this injury, and more likely than not, his pain condition was caused by degenerative changes and age, and not the accident. Howard presented no contradictory medical opinion on the shoulder issues.

---

[14] *See* ECF No. 100 (stipulating that "[p]laintiff will not be seeking future medical treatment at trial").

[15] The parties stipulated that all of these expert witnesses are qualified to provide opinions in their fields.

I find by a preponderance of the evidence that the car crash caused Howard to suffer new conditions of sciatica pain and a shoulder sprain. The crash was not a minor one. Although Howard's vehicle showed little damage, Howard persuasively noted at trial that this classic Mustang was made of steel, and Agent Neira's cruiser sustained far more damage. As Neira testified at trial, it was "essentially totaled." The condition of the vehicles is strong evidence that the force of the crash was significant.

While I credit the testimony of Dr. Bjerke that Howard's medical imaging does not show a physical change in the condition of his spine as a result of the accident, I also credit the testimony of Dr. Elkanich that Howard experienced a worsening of his pre-existing back condition that created this new sciatica pain problem. And because Dr. Elkanich's testimony about the reasonableness of the extent and cost of the back and sciatica treatment is not contradicted, I find that Howard is entitled to recover the cost of the bills related to that injury.

But I also find that Howard's shoulder injury was not as extensive as he claims or treated for. I credit the testimony of Dr. Lorenzetti that the shoulder injury was a mere strain that would have resolved within six weeks at the latest. Shoulder strain was the diagnosis that Howard received at Valley Hospital the day after the crash, and Dr. Lorenzetti persuasively demonstrated that the MRIs of Howard's shoulder showed no traumatic injury. So I find that the only bills for shoulder-related treatment that Howard is entitled to recover are those incurred through the first six weeks after the accident, or through August 9, 2020.

These findings and conclusions result in the following adjustments to the billing amounts that plaintiff claims:

| Provider | Amount stated at trial | Trial exhibit | Adjusted amount | Reason for adjustment |
|---|---|---|---|---|
| Valley Hospital | 5,754.00 | EXH 3 | 5,754.00 | n/a |

| Provider | Amount stated at trial | Trial exhibit | Adjusted amount | Reason for adjustment |
|---|---|---|---|---|
| Shadow Emergency Physicians | 1,957.00 | EXH 4 | 1,957.00 | n/a |
| Bone and Joint Specialists | 2,460.00 | EXH 5 | 1,460.00 | $1,000 charge for surgery-cost letter is a litigation expense, not treatment, so disallowed |
| Center for Wellness | 30,818.43 | EXH 6 | 25,769.63 | disallowed charges for 11/12/20 and 3/3/21 shoulder procedures and related follow-up appointments [PLTF139] |
| ZK Outpatient Rehabilitation | 9,035.00 | EXH 7 | 4,832.50 | disallowed 50% of charges after 8/9/20 due to shoulder findings |
| Desert Radiology | 245.00 | EXH 8 | 245.00 | n/a |
| Durango Outpatient Surgery Center | 38,608.00 | EXH 509a | 33,983.00 | $4,625 bill for 3/3/21 shoulder nerve ablation disallowed [US0953, US1089] |
| LV Radiology | | EXH 509a | | |
| Dr. Garber | 1,525.00 | EXH 512 | 1,525.00 | n/a |
| Dr. Schneier | 650.00 | EXH 517 | 650.00 | n/a |
| | **TOTAL past medical expenses** | | **76,176.13** | |

I also find that Howard credibly established that he has experienced pain and suffering for these injuries that I find were caused by the car accident. The testimony at trial was that Howard treated for injuries for about ten months after the crash. He was honest about the fact that he had persistent, chronic pain before the accident, and he was able to explain how the new pains from the accident impacted him. But I find that a preponderance of the evidence shows that the increase in his pain condition was more significant only in the few months immediately following the crash.[16] By early October 2020, Howard was reporting to his physical therapist

---

[16] This finding is supported by the testimony of doctors Bjerke and Lorenzetti primarily, along with Howard's own descriptions of his pain conditions that are found in the physical-therapy records at Exhibit 7.

7

that his back was "not worse than it was at baseline before the accident," and though his shoulder was "still bothering" him, it was "only an ache" and he was "not limited in movement."[17] So I conclude that Howard is entitled to an award of $60,000 for his pain and suffering caused by the negligence of the agent, for a total damages award to the plaintiff of $136,176.13.

**B.    The defense's motion for fees and costs of continuing trial is denied without prejudice.**

Trial of this case was originally set for February 4, 2025.[18] The day before that trial was scheduled to commence, plaintiff's counsel Anthony Ashby, Esq. filed an emergency motion for a trial continuance, explaining that he had suffered a traumatic head injury and was incapable of trying the case the next day.[19] Finding Mr. Ashby's excuse credible, I granted the motion and continued the trial.[20] Defense counsel, who are Assistant U. S. Attorneys working at the U.S. Attorney's Office in the District of Nevada, move for fees and costs related to that continuance. They seek fees of about $13,505 for their own trial-preparation time, plus $37,240 in fees and expenses related to their two experts' preparation and travel, for a total of $50,745.72.

I find that fairness supports an award of some reimbursement for some expenses that could not be recouped or repurposed as a result of this eleventh hour continuance. Mr. Ashby graciously offered to pay such expenses in exchange for a stipulated continuance; ultimately he filed a motion, which the government verbally opposed. The last-minute continuance inevitably resulted in some wasted trial-preparation time and expenditures, and reimbursement of those reasonable expenditures is warranted.

---

[17] EXH 7 (record dated 10/05/2020).

[18] ECF No. 101.

[19] ECF No. 102.

[20] The attorneys from Mr. Ashby's firm who took over this case after the trial continuance represented to the court that Mr. Ashby has not returned to his law practice.

But the amounts that defense counsel seeks are grossly excessive and illogical. First, I cannot conclude that the work itemized in the motion could not be useful in the ultimate trial of this case. And second, while the defense seeks reimbursement for the experts' travel time to Las Vegas for their testimony and their scheduled flights and lodging, it is not clear from the motion that any of those expenses were actually incurred and not able to be credited toward the testimony or travel accommodations for the experts' ultimate trips to the continued trial. So I deny the motion without prejudice to defense counsel's ability to renew its motion within 10 days with better support demonstrating what charges and expenditures were truly lost as a result of the continuance.

## Conclusion

IT IS THEREFORE ORDERED that the Court finds in favor of Plaintiff Deandrea Michael Howard and against the Defendant the United States in the amount of **$76,176.13 in past medical expenses, plus $60,000 for pain and suffering, for a total damages award of $136,176.13.** And with good cause appearing and no reason to delay, the Clerk of Court is directed to **ENTER JUDGMENT** accordingly and **CLOSE THIS CASE.**

IT IS FURTHER ORDERED that the Federal Defendant's Motion for Costs and Fees Related to Continuance of Trial **[ECF No. 104] is DENIED** without prejudice to the defendant's ability to file a revised motion for such relief within the next 10 days that addresses the deficiencies and concerns above.

_____
U.S. District Judge Jennifer A. Dorsey
May 23, 2025